IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Terry J. Smith, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Mr. Moore, SCDC MD, and Ms. Enloe, )<br>SCDC NP, )<br>)<br>Defendants. )<br>) | Civil Action No. 6:11-2248-TLW-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On January 26, 2012, the defendants filed a motion for summary judgment (doc. 25). By order filed January 26, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed responses in opposition on February 21, 2012, and March 1, 2012, and the defendants filed replies on March 2 and 12, 2012.

**FACTS PRESENTED**

The plaintiff is currently incarcerated at Perry Correctional Institution. He alleges claims for medical neglect, medical harassment, racism, disrespect, slander, and discrimination (comp. at 2). Specifically, his allegations pertain to medical treatment received while incarcerated at Perry where the defendant Enloe is a nurse practitioner. His allegation as to Dr. Moore, the Medical Director for the South Carolina Department of

Corrections ("SCDC"), is limited to "Doctor Moore . . . is the medical director for S.C.D.C. and he knows about my condition because he seen me before I left Kirkland R & E Center" (comp. at 4). The plaintiff also alleges he has been turned away for sick call. The plaintiff requests to be transferred from Perry and that Dr. Moore approve him for special shoes.

After his transfer to Perry from Kirkland R&E Center, the plaintiff was seen in the doctor's clinic on August 4, 2011, complaining of low back pain radiating into his legs. The plaintiff requested the drug Neurontin, which is prescribed for neuropathic pain. The symptoms the plaintiff complained of were not neuropathic, but radicular in nature. As a result of his complaints, the plaintiff had lumbar spine and bilateral foot x-rays, which were normal. He was prescribed Nortriptyline 25mg for these complaints. On October 4, 2011, the plaintiff again requested Neurontin for his back pain. His back was examined on that date and found to be without spasm. He was scheduled to see the doctor on October 20, 2011. When he was seen on that date by Dr. Lewis, the plaintiff complained of dystrophic toenails and indicated that he was not receiving benefit from the Nortriptyline. Dr. Lewis decided to increase the Nortriptyline (Amy Enloe aff. ¶¶ 6-7, doc. 24-2).

On October 1, 2011, SCDC issued a procedural guideline regarding shoes and shoe inserts. Pursuant to Paragraph II E of that guideline, patients who are diabetic without a history of foot ulcers or amputations are to be eligible for a pair of athletic shoes from the canteen at medical expense. The plaintiff was approved for shoes on October 21, 2011. Pursuant to this guideline, the plaintiff was issued a pair of tennis shoes on November 10, 2011 (*id.* ¶ 5). In his response to the motion for summary judgment (doc.27), the plaintiff concedes that he received the shoes that were the subject of his initial complaint in this case. He alleges in his response that the shoes he received have been stolen from his room and he only has flip flops to wear. In an affidavit submitted in support of the defendants' reply, Nurse Enloe testified that the SCDC is moving toward issuing a "Croc" type shoe to inmates who qualify for the shoes. Perry has not yet received the

shoes, but Nurse Enloe anticipates they will be received shortly. At that time, the plaintiff will be issued a pair of the shoes (Enloe aff. ¶ 6, doc. 36-1).

The plaintiff also alleges that on one occasion he was turned away at sick call. Between the time the plaintiff arrived at Perry in May 2011 and November 2011, the plaintiff has been seen in sick call 32 times. This does not include his nine visits to the mental health clinic, his one visit to the blood pressure clinic, his seven visits to the doctors clinic, his four visits to the diabetic clinic, or his visits to the dental clinic and visits for lab work. Although the plaintiff does not give a date that he was turned away from sick call, his records indicate that he was not seen at sick call on July 28, 2011, because of fog and security issues, but was seen on August 2, 2011. The plaintiff was not able to be seen to have a dressing changed on his toe from October 22 – 24, 2011, due to his dorm being on lock down. He was seen and treated on October 25, 2011. According to Ms. Enloe's affidavit, the only time an inmate would be turned away from sick call is if they have a pre-scheduled appointment within the next day and their condition allows them to wait to be seen at their scheduled appointment. Even with a pre-scheduled appointment, an inmate is not turned away at sick call if he presents with a new or different complaint (Enloe aff. ¶¶ 8-9, doc. 24-2).

In his response (doc. 27) to the defendants' motion for summary judgment, the plaintiff does not address the defendants' explanation regarding his allegations of denial of sick call. Instead, the plaintiff raises a new issue regarding a sick call visit on February 2, 2012, which occurred after the filing of this action. The plaintiff does not allege he has filed a grievance with regard to this complaint. He alleges that he was not seen for sick call on that date and his medicine was not refilled at that time. He does not allege any injury as a result of these allegations. In her affidavit filed in support of the defendants' reply, Nurse Enloe testified that, according to Perry's records, the plaintiff presented for sick call for a cold on February 2, 2012. At that time, he informed the medical staff that he was out

3

of blood pressure medication. The pharmacy was called to order more, and the plaintiff was given a two-day supply of his blood pressure medication at that time. His blood pressure was rechecked five days later and was fine. The plaintiff was given his medication when it arrived from the pharmacy (Enloe aff. ¶¶ 4-5, doc. 36-1).

In a second response (doc. 33) to the motion for summary judgment filed on March 1, 2012, the plaintiff claims that the defendants took his case file and have refused to return it. The plaintiff claims he cannot respond to the defendants' motion for summary judgment without the file. Notably, the plaintiff had already filed a response in opposition to the motion for summary judgment on February 21, 2012.[1] In an affidavit submitted in support of the defendants' reply to the plaintiff's second response in opposition to summary judgment, Associate Warden Florence Mauney testified that the plaintiff was in lock up at Perry from February 13, 2012, until March 2, 2012. Inmates in lock up are not allowed to have a legal box unless they have a pending case and request the legal box in writing. Associate Warden Mauney researched the log books and could not find where the plaintiff requested his legal box while he was in lock up (Florence Mauney aff. ¶¶ 2-4, doc. 39-1).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of

---

[1] As pointed out by the defendants, the two responses filed by the plaintiff are in different handwriting (*see* docs. 27, 33). Also, both responses are unsigned. Pursuant to Rule 11 of the Federal Rules of Civil Procedure, every pleading, written motion, and other paper must be signed by a party personally if the party is unrepresented. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the party's attention. *See* Fed.R.Civ.P. 11(a). Here, it does not appear that the Clerk of Court notified the plaintiff of the omission in the two responses. The plaintiff is directed that he *must* sign documents filed in the future with the Clerk of Court.

the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Deliberate Indifference to Serious Medical Needs***

The plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs. Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by

5

incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The plaintiff's allegations with regard to his desire for Neurontin are virtually identical to those raised by an inmate in *Blackburn v. South Carolina*, C.A. No. 0:06-2011-

6

PMD-BM, 2009 WL 632542 (D.S.C. 2009). In *Blackburn,* the plaintiff alleged he suffered from neuropathic pain, which is pain caused by no known physical trauma. The defendant doctors in *Blackburn*, as in the instant case, prescribed Nortryptiline for Blackburn's condition. The plaintiff there alleged that the Nortryptiline was ineffective, and he was still in much pain even after taking the medicine. He informed his doctor that the medicine was not working and that he wanted his prescription to be switched to Neurontin, which the plaintiff believed would more effectively deal with his neuropathic pain. The doctor repeatedly refused, telling the plaintiff he believed Nortryptiline was the best course of treatment. *Id.* at *11. The court held that even viewing all assertions and inferences in the light most favorable to the plaintiff, the court could not find any material issue of fact regarding the plaintiff's claim of deliberate indifference. The plaintiff's voluminous medical record clearly demonstrated that throughout the period in question, he received regular, comprehensive medical treatment for his ailment. The court ruled that the plaintiff's claim of deliberate indifference in violation of his Eighth Amendment rights failed as a matter of law. *Id.*

Here, it is undisputed the plaintiff has received extensive medical care since his arrival at Perry. Defendant Enloe addressed the plaintiff's complaints, and a complete physical examination, including x-rays, was done. The plaintiff was prescribed medication to address his complaints. The fact that the plaintiff disagreed with the type of medication prescribed for his pain is insufficient to show deliberate indifference. Furthermore, when the SCDC guidelines were revised to allow shoes for diabetic inmates, the shoes were issued in accordance with the guidelines. While those shoes were subsequently lost or stolen, the SCDC has stated that the newly approved shoes will be provided to the plaintiff when they are received at Perry. To the extent the plaintiff was not seen for sick call on a couple of dates, the defendants have shown that was because of security issues, and he was seen as soon as possible thereafter. The plaintiff has failed to show any evidence of

7

the defendants' purposeful indifference to his serious medical needs, and his allegations fall far short of raising an issue of constitutional proportions.

Furthermore, with regard to the plaintiff's new claim in his response regarding a sick call visit on February 2, 2012, which occurred after the filing of this action, he does not allege any injury as a result of these allegations. Moreover, Nurse Enloe testified that, according to Perry's records, the plaintiff presented for sick call for a cold on that day, and he informed the medical staff that he was out of blood pressure medication. The plaintiff was given a two-day supply of his blood pressure medication at that time, and the medicine was ordered from the pharmacy. His blood pressure was rechecked five days later and was fine. The plaintiff was given his medication when it arrived from the pharmacy (Enloe aff. ¶¶ 4-5, doc. 36-1). See *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.").

Based upon the foregoing, the plaintiff's Eighth Amendment claim fails as a matter of law.

***Defendant Moore and Respondeat Superior***

Defendant Moore was named as a defendant by virtue of his position as Medical Director for the SCDC. The plaintiff alleges that Dr. Moore "knows about my condition because he seen me before I left Kirkland R&E . . . " (comp. at 4). The plaintiff does not allege any action or inaction by Dr. Moore with regard to his medical care. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail."). To the extent the plaintiff seeks to hold Dr. Moore liable in his supervisory capacity, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978);

8

*Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.). There is no evidence that Dr. Moore was aware of any of the acts or omissions alleged by the plaintiff or that he either failed to take corrective action as a result of deliberate indifference to or gave tacit authorization of any such act or omission. Based upon the foregoing, the plaintiff has failed to state a claim against Dr. Moore.

### *Racism claim*

To the extent the plaintiff claims the defendants' actions rose to the level of racial discrimination and harassment, it is clear that inmates have a constitutional right to be free from discrimination on the basis of race. See *Lee v. Washington,* 390 U.S. 333 (1968). However, "absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated." *Chapman v. Reynolds,* 378 F.Supp. 1137, 1140 (W.D. Va.1974); see also *Williams v. Meese,* 926 F.2d 994, 998 (10th Cir. 1991) (conclusory allegation of racial discrimination in confiscation of excess property insufficient to state claim because no allegation that prisoners of another race were allowed to retain more property); *Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980) (conclusory allegations of racial discrimination insufficient to state claim). A mere conclusory averment, as provided by plaintiff in the instant case, is insufficient to withstand a dispositive motion. See *Ross,* 759 F.2d at 365. Based upon the foregoing, the defendants are entitled to summary judgment on this claim.

9

*Access to the Courts*

As noted above, in his second response to the motion for summary judgment, the plaintiff claims that the defendants took his case file and have refused to return it, and he cannot adequately respond to the defendants' motion for summary judgment without the file. While no access to the courts claim was alleged in the plaintiff's complaint, out of an abundance of caution, the court will address it here.

The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53. A claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Here, the plaintiff had already filed a response in opposition to the motion for summary judgment on February 21, 2012, when he raised this issue in his second response. Furthermore, on March 1, 2012, the plaintiff filed a motion for preliminary injunction. As the plaintiff's filings evidence his ability to prosecute his claims and he has shown no injury, any claim for access to the courts would necessarily fail.

*Qualified Immunity*

As an additional ground for dismissal, the defendants in their individual capacities are entitled to qualified immunity as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and its progeny, as their conduct did not violate any constitutional right of the plaintiff.

*State Law Claims*

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise

supplemental jurisdiction over any claims for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 24) be granted. Should the district court adopt this court's recommendation, any pending nondispositive motions will be rendered moot.

s/ Kevin F. McDonald
United States Magistrate Judge

June 20, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.